You need not ask for leave to divide your time. Just manage it as you choose. Do as you choose. Once the light turns red and you still see numbers, it doesn't mean you have that much time. It means that's how much you're over the time. First case, United States v. Rodriguez is submitted. Next, United States v. Joyce will hear argument. May it please the Court. Good afternoon. I'm Mary Geddes. I represent Brian Joyce. There are two issues that have been identified for appeal. The first is whether or not two special conditions of supervised release which were imposed by the Court on Mr. Rodrigue or working a greater deprivation of liberty than reasonably necessary. The second issue is one raised by the Appellee, which is whether or not there was a waiver with respect to Mr. Joyce's right to appeal these special conditions. Could you help me on the waiver first? Yes, Your Honor. It looks to me like the waiver applies because the conditions of supervised release are part of sentencing. Supervised release is part of sentencing. Now, there are some statements in some Ninth Circuit cases that seem kind of loose on that, and I'm not quite sure how to deal with the waiver issue. Your Honor, I don't want to reiterate the arguments I made in my brief already. I know you've read them. I will refer the Court specifically to the government sentencing memorandum. On page 2 of that memorandum, it is included in the supplemental excerpt of record, and it's page 2 of the government sentencing memorandum, because it really speaks to the expectation of the parties as to what the plea agreement governed. The plea agreement specifically governed a sentence disposition and was not specific to supervised release conditions. Here's my thinking. When I did criminal defense, we ordinarily were talking when we worked out the deal about how much time the defendant would do if there was likely to be time, because that was so much more important than conditions of, in those days, it wasn't supervised release, but any conditions of probation. And I would think that would still ordinarily be so. The prison time or the jail time would be the critical item. But that doesn't preclude counsel from negotiating about conditions if they have a concern about it. And in these dirty pictures cases, you always have conditions that are go beyond the usual. Well, you frequently do, of course. But I have not aware of any case, nor does this case specifically encompass an agreement as to the defendant's waiver of his right to appeal on any special conditions imposed by the Court. Ms. Geddes, what is the only jurisdictional basis for such an appeal? B, Section 3742. That is the only statutory basis that you would have to invoke our jurisdiction to review the sentence. That's true, Your Honor. Yes. So when your client waived, and I'm looking at Supplemental Excerpt of Record 14, which is paragraph E of the plea agreement, when he waived his rights under 18 U.S.C. Section 3742 to appeal any aspect of the sentence imposed in this case, isn't that an all-inclusive waiver that essentially says, I will not be bringing a 3742 challenge to my sentence? Well, Your Honor, in the Ninth Circuit's decision, and I'm sorry, I don't have the specific site here, but it's in my brief, the courts have put the onus upon the government, which crafts and drafts the language, specific language of the agreement. Ms. Geddes, I've reviewed a lot of plea agreements. I've drafted them both as a prosecutor and as a defense lawyer. I've never seen one this specific on this type of an issue. I don't know what more a party could say if the intent was to prevent the defendant from invoking Section 3742 to challenge any aspect of a sentence. I challenge you to come up with language that is more specific than that. Well, I think, as I said, not only do I do I believe that the plea agreement itself, which specifies what specific terms are agreed to by the parties, is completely otherwise silent on what supervised release conditions may be. But why isn't supervised release contained within the phrase in the plea agreement any aspect of the sentence imposed? Well, I think it's not because the law specifically distinguishes the sentence of imprisonment from supervised release conditions. I think that we use them both terms. I mean, I think there's an imprecision in that. There's a certain ---- Well, when you invoke someone's supervised release for violation of conditions, we have case law that says that is part of the sentence that was imposed, don't we? Yes. I think there have been two ways in which the term sentence has been used. One is specific to a sentence of imprisonment, and one is the broader nomenclature which encompasses all aspects of a criminal sentence. I ---- Judge Talmadge, I'd ask you to look at the government sentencing memorandum because I think it really sets out ---- it's another document which basically interpret ---- helps interpret the plea agreement and the terms of it and the expectation of the parties. I'd like to move that it's not ---- well, I'm sorry. I was going to say, but even if we were to apply normal contract interpretation rules, wouldn't we first have to find that the phrase that I'm looking at in the plea agreement is ambiguous in order to go outside the terms of the plea agreement itself to interpret what that means? Well, that's exactly my argument, that it's ---- that it hasn't been encompassed. It hasn't been specifically included in the plea agreement nor discussed, and therefore ---- Okay. But we have to find it ambiguous first, don't we, before we get ---- I believe that's correct, Judge. I believe you would have to. Judge Goldberg. Well, I'd just like to let counsel have some time to argue the merits because I think it is ambiguous, and because waivers are the relinquishment of an important right, I don't think it waives every special condition of supervised release. So I'd like, at least as one of the panel, to hear some discussion on the merits because when I get to the merits, it seems to me it's a reasonable restraint to say that someone who's found guilty of possession of child pornography won't have a computer linked up to get to the Internet. I think there's problems with the language of both 3 and 4 for these reasons, Judge Gold, which is, first of all, the language of not having no access to any computer capable of accessing the Internet. If it reasonably, that can't mean any computer that you buy anywhere because computers can be linked to the Internet. That has to mean a computer that someone has hooked up to the Internet via an Internet service provider of some kind. Well, it's not only imprecise in terms of talking about Internet ---- making a computer Internet ready. I mean, does the Court really require that a modem be disabled or removed from a computer? But it's also problematic ---- But it doesn't say a modem has to be disabled. It just says the computer can't have access to the Internet. It says capable of accessing the Internet, but ---- Well, the normal meaning of that would mean that the computer is, you know, gotten an ISP deal, and someone can go to the computer and open a line on the Internet. Well, I think there's imprecision in that, but also there's a problem with the use of the term access as opposed to possession and use. We could just construe the problem away, couldn't we, by reading the condition so that it doesn't mean he's in trouble if he walks into Kinko's? Or has a roommate who has a computer. I think that's a problem. Or there's a co-worker who has a computer on their desk. I mean, I think it really does ---- it's not just the Kinko's Public Library's problem of anyone in his ambit, whether it's at home or at work, who has a computer on their desk, whether or not that can be designated as ---- But there has to be some language chosen. If he's going to get out of jail and be unsupervised release, it seems that it's reasonable for the government to impose this type of restraint in order to affect him as it would affect the public. Well, in this ---- with respect to this particular condition, it is an absolute ban, the way it's been worded. There isn't any kind of tampering language like we found in Reardon, the Reardon case, which subjected this particular ---- the policing of this particular condition to the discretion of a probation officer. I thought this condition was kind of a model of narrow tailoring, instead of just leaving it wide open for the probation officer to do whatever he or she wanted.  I didn't understand that, Judge. Well, this condition strikes me as more carefully tailored than most of the ones that we read in these cases. Well, it actually could be read as ---- I mean, by saying no access, that could potentially operate as an absolute ban. It has that out, as I recall, so that if he needs access to a computer hooked up to the Internet at work, it can be approved. It could be proofed? Approved. You mean, are you referring to condition number four? I'm sorry, there are two conditions here. Am I confusing one case with another? I thought this was the work construction, and if he needed access at work, he could get approval from his probation officer, even though the work computer had Internet access. Well, with respect to the work condition, that's number four. The way it's worded is, if his work involves use of a computer, then the employer would be notified of his conviction. There would be consultation between the probation officer and the employer, and then the probation officer ultimately might authorize use. The problem here is, once again, we have an over-breath problem with the language, because not all computers utilized in the workplace are connected to the Internet or utilize it. Second of all ---- I see that my time is up. Go ahead and finish what you were saying. Second of all, we have basically ---- the government had not even objected to the Internet use at work. Instead, we have the Court adding the condition of employer notification and involvement in the decision-making as to whether or not the defendant should have access. Now, the kinds of daily workplace concerns we have now, we have inventorying being done over the Internet, employers corresponding with employees by e-mail. Given the nature of this offender, given the nature of this offense, which was simple possession of images obtained off the Internet, no e-mailing, no shipping, no transporting, this really works a greater deprivation of liberty than is reasonably necessary on the backs of business. So is your argument that the employer shouldn't be told if he's going to use the employer's computer for work-related purposes if it's Internet capable? There's two arguments here. One is there's an imprecision of language in terms of distinguishing Internet access versus the use of a computer. I understand that argument, but what I heard you say I thought was a privacy argument. There's a second argument, which is whether or not this particular condition, the way it's currently worded, requiring employment notification and involvement, whether or not that works a greater deprivation than is reasonably necessary in this context. This is a fellow with no history. I think if the individual's, I guess it would be a privacy interest in not wanting to tell the world that he has this conviction against the employer's right to know that he's giving access to an Internet capable computer to somebody who has previously misused a computer. Well, I think this has a, you know, we're in the real world here. We know what the notification of the employer with respect to this information is going to be. I understand. But that is your argument. That's why we're talking about it being overly restrictive in this particular case. So you don't want his boss told? Beg your pardon? You don't want his boss told? Not as a special condition of supervised release. It's not indicated here. I want you to clarify. At a few points in your argument, you're arguing as if we should look at this provision on its face, sort of like a First Amendment challenge to an ordinance, whereas I would have thought that we just look at this provision and say, how is it reasonably applied to this person on supervised release that is as applied to him? As opposed to could it be overbroad with regard to anybody in the world in any circumstance? Is there any authority that supports looking at terms of special conditions of supervised release and interpreting whether they're overbroad kind of as applied to the world as opposed to looking at whether they're unreasonable as applied to the criminal defendant? I think it's, well, as I understand it, Judge Gould, there's two different analyses here. One is whether or not there is a reasonable relationship between the offense, the offender, and the condition imposed. Right. And the second analysis, I understand, is then looking, even if it is reasonably related, does it work for greater deprivation of liberty or hardship than is reasonably necessary in context, once again specific to the offender and the offense? But it is in context to this offender. Always. Always. I certainly agree. Thank you. Where does this privacy right come in to not have his boss told about the conviction? It's a matter of public record, this conviction. Well, I don't know whether privacy really is the right identification of this particular right. What is the basis of the analysis of saying that a condition isn't, works a greater deprivation of liberty or hardship than is reasonably necessary? What is the basis of that right? Well, he doesn't have a liberty interest in passing himself off as one who has not been convicted of possession of child pornography. He doesn't in terms of one that information is pertinent, for example, when he's asked on a job application. But there certainly is no regular or standard condition of supervised release that requires a defendant to identify himself to everybody as a felon and as somebody convicted of the crime of child, of possession of child pornography. Thank you. Thank you, counsel. Good afternoon, Your Honors. If it pleases the Court, Steve Scrocchi from the U.S. Attorney's Office at Anchorage Alaska. I was prosecutor below in Mr. Joyce's case. So you're the one who drafted this allegedly ambiguous language? Yes, sir. I am the one. The government's position in this case, Your Honors, I think if you look at it in the big picture, is we came across in terms of sentencing and the plea agreement itself from a position of reasonableness tailored to Mr. Joyce's specific offense. Except for the special conditions of release. Nobody knew about those until after sentence or until the day of sentencing, right? No, sir. Those, Your Honor, those were provided to Mr. Joyce in the government's sentencing memo and, in fact, were part of the bargaining exchange between the government and the defendant. Oh, you actually bargained on the conditions? We attempted to bargain on the conditions. It was in those aspects of sentencing were open. Under the District of Alaska's sentencing policy, the memo is to the court or due a week ahead of sentencing. So these issues were raised for both parties prior to a position of sentence. The issues were disclosed and raised in your memorandum?  But there was no agreement on these conditions? That's correct. And oftentimes that's part of the bargaining exchange. You have an arms-length transaction and Judge Kleinfeld, as you indicated, sometimes the big picture is how much time are we going to be asking for? What can we all agree to? Let me ask your question first because I thought the government was here arguing that in light of the waiver of appeal of a sentence, that the government is just out, can't challenge these conditions. But I thought we had a couple of Ninth Circuit cases. U.S. v. Bollinger and also U.S. v. Rowan, where we, despite such a waiver, we reviewed whether conditions of supervised release were valid. In this case, Your Honor, my response would be that 3742 covers the issue of supervised release. And it covers it in terms of the basic bargaining contract between the government and the defendant was, you're going to get, if the court imposes this sentence, this is the judgment you're going to get in 27 months. I'm not familiar with U.S. v. Bollinger. No, I'm not. That's at 940 F. 2nd, 478. And I think at page 480, the court there is upholding validity of a waiver, but then proceeding to address the merits of a challenge to special conditions. I think the court did the same thing in U.S. v. Rowan. It's another Ninth Circuit case. If I might address that in terms of our agreement, Your Honor, I think I know what you're concerned about, is that how is a defendant going to be, how is a defendant going to appeal a condition if it goes far outside what the parties might be bargaining for, maybe in a circumstance like this. So the concern is, how is he going to address that? The practical problem is if we are required to put into a plea agreement every condition of supervised release or what the fine was going to be. If the court imposes a fine of, say, $10,000 and the defendant says, I want $2,000 and the parties have no agreement about the amount of the fine, and that is incorporated into the waiver in the plea agreement from our perspective, the government's forced to make a laundry list in a plea agreement that's 45 pages long as opposed to 25 pages long. History is telling our office they're getting longer and longer and longer. That's why the language in the plea agreement of 3742 has been incorporated. The only thing from a practical perspective for us to do to enforce this waiver would be to attempt to include a laundry list of appellate issues that might come up that we cannot even foresee. Well, in our opinion we're not going to do that. I'm willing to be persuaded that there's a way to answer that precedent, but I haven't seen the answer. From what I have read, I am familiar with them from not within this week, but when I was doing research, that there are occasions when a court goes out of its way in special circumstances to address those conditions. I don't think this condition warrants that. The issue of supervised release and not allowing him to use the Internet is not something that I'm losing my train of thought. It's not a standard. Well, you're saying it shouldn't have been unexpected in such a case. Yes. Thank you. It would not be unexpected because this is something we argued ahead of time and everybody had noticed. But, I mean, that's sort of like the devil's in the details. You know, the scope of the provision can lead to a determination whether it's reasonable or not. I guess I'm troubled with foreclosing appellant from having an argument on the merits of it, and you may prevail with the other members or you may not, but let's get to the merits of it. We'll address the jurisdiction issue. Thank you.  Thank you. As to the reasonableness of this restriction, again, the government didn't come in and say at the end of the game the government said, look, you can have you don't have to notify your employer. That's one thing the government conceded because ordinarily the impact on the defendant if he's not involved with children is just too great to notify them. It's hard to understand it. I'm sorry. That's not a mic. It's not a mic. It's a recorder. Yeah. Oh, I'm sorry. Just look at us and speak clearly. The conditions that the government imposed on Mr. Joyce in this case were directly tailored to the offense of conviction. Mr. Joyce wasn't the type of person who was involved with children. He was a construction worker. There isn't any evidence that he used a computer at work to access child pornography. The government's concern was Mrs. Geddes' argument, as I understand it, is come on, let's be realistic about this. You know, this is 2003. Everybody uses computers. His employer orders parts over the Internet, and it's going to be reasonable, even if he's working construction, to think that at some point he's going to need access to the Internet. And he can do that. Once he crosses that Rubicon or that threshold with his employer, the judgment allows him to ask a probation officer to notify the employer that this man has a conviction for possessing child pornography through the Internet. And he's going to tell the next employer, because now he's going to lose his job, according to Mrs. Geddes, by telling his current employer that he's a convicted felon. That's a concern. And that's probably an insurmountable concern. The employer might not, Your Honor. I mean, there are cases where people do work and are employed, and the people do know, and it's a matter of public record. The State of Alaska has a... I would think that what a man would do is tell his employer he's got a thing about computers, not tell him what the thing is. And he doesn't want to deal with a computer to have somebody else on their job do that. He's free to do that. There's nothing in the record that says Mr. Joyce used e-mail, that he paid his bills electronically, that he was doing some legal scholarly research over the Internet, or that he even accessed the Internet through work. There's nothing in the record that says that. Had there been something in the record that says that, it might be more of a persuasive argument, but we're to the point where technology is so pervasive, there's just no way to keep anybody away from it, which goes to the government's argument about access. The government is not saying that Mr. Joyce can't access Kinko, that he can't go into a cybercafe or a library. The point of the matter is the court's judgment should be interpreted as saying you cannot have possession or access to a computer that can access the Internet. Okay. Does that mean he can't go into a cybercafe? No, it does not. We're on record saying it does not. It was never our intention of limiting his access to any place public. It was the point of, it is so fundamentally dangerous to allow an individual who possesses child pornography via the computer to have access to the Internet again. If you think about it, every time he's online, he's seven to eight steps away from getting child pornography. Could you help me on two issues? First of all, go back to Bollinger a minute. What Bollinger does, well, you must know what it does. You cited it twice in your brief. Tell me how to deal with Bollinger. Your Honor, to be candid, I can't recall the specific facts of Bollinger at this time. Maybe I'll help you with it. Can you remember anything about it? No, I can't. I would have thought you would have reviewed it on the flight down. That's not one I had in my stack. I apologize. That's actually when I reviewed it. I understand. What Bollinger did is it said a waiver is good. It sticks against the dissent. And then it went up and it applied that to the sentence of time to serve, as I recall. And then it analyzed the appellate point about the supervised release condition. And it didn't even talk about the waiver. There's no discussion about whether that's waived, too. There's just another subdivision of the opinion. And it talks about the supervised release condition and says that's fine, too, on the merits. And I'm wondering how we should deal with it. I would have thought maybe you knew how to deal with it and were going to tell me what the briefs in Bollinger raised or conceded or something like that. I apologize for that, Your Honor. I did not do that. My other question for you is the roommate issue. I don't know if this fellow has roommates or if there's anything in the record about it. It might be in the pre-sentence report, which I haven't read. But I was thinking, let's say he's married and his wife uses the computer and she really likes doing her e-mail. Do they have to separate? What's the effect? That is something Mr. Joyce in the pre-sentence report, you'll see, was residing in a trailer. There was a mother with a young child there. He rented a room in this trailer by himself. There was not a lot of interchange or interplay between him and the other residents. So he rents a room in a trailer. He doesn't have a roommate that they would have mutual access to each other's property. No. It was separate. It was separate. The practical aspect of this is if there's an issue with access, you call the probation officer. If we were required to list, again, in the laundry list term of what everything is prohibited for him from doing, it would be virtually impossible to do that because you could always define things in different ways. If there's an issue about a roommate, ordinarily he would call the probation officer and say, here's what the judgment says. Here's what my conditions of probation are. Am I permitted to do this type of thing? And that's something that the parties would have to argue about in front of the court later on at a different time. So they'd go back to the court to get a clarification? Per circumstance, yes, Judge. But you're saying right now, in circumstances at the time of sentencing, didn't raise an issue of a roommate who might have a wife or might have an Internet access computer? No, it did not. And I take it, and maybe this is no different than the question Judge Wold asked of you earlier, but I take it if there is an alleged violation of this condition, A, the probation officer has to make a determination as to whether he's going to bring that violation to the attention of the court, and then B, there's going to be a revocation hearing at which the court can decide whether or not this is a sufficiently serious enough violation to violate the terms of the supervised release. If I might go through the procedure quickly. The procedure would be the probation officer would do the investigation, decide on his or her own part whether that amounted to a violation of supervised release, would file the motion with the court, noticing up whatever conditions had been violated. We would have an evidentiary hearing, and the court would make its determination about whether there was a violation or not. So it's a multi-step proceeding. All right. How about the question that I posed to Ms. Gaddeh? I mean, do we at this stage only review the reasonableness of the provision as applied to this defendant in the circumstances he was in at the time of the sentencing, or do we have to consider whether it's overbroad and would be unreasonable in some other setting that's not presented? On its face as opposed to as applied. Right. I mean, is there a law on that issue? I don't know of any specific case on point, but given the cases that are in Reardon across the circuits that are cited in Reardon, and Freeman and Scott and White, it seems to be that the more appropriate analysis would be on as applied to the individual defendant, because in some cases the tipping point appears to be whether it's somebody who has e-mailed and solicited for the murder and rape of children. Other cases are concerned about whether there's distribution and how much access the person did use on the Internet. In this case, the parties were free and had a bargain and essentially argued what the most appropriate application would be, which, ergo, leads the sentencing judge to fashion more appropriate remedies as each case sees fit. If he's going to get married and the woman he wants to get married to uses the Internet and he goes to his probation officer, and then they call up the government and say, what are we required to do, what are you telling them? I'm not here to say that. I don't know if they call the U.S. attorney who's on the case or, you know, how that works, but. Well, they would request a modification of supervised release, and they would file a letter or notice saying, this is what the defendant is requesting that he does. And I'm not here saying, since I do these types of cases, I'm not here saying there's any technological fix. Filters aren't the fix. Netnanny isn't the fix. Norton isn't the fix. Because they can all be manipulated by the administrator who installs the software. But there are ways and reasonable ways that you can impose restrictions on Internet access, on warrantless searches on the computer, for example. But that is also has a downfall because it makes the probation officer a cyber-sleuth. In other words, it puts the burden on them. But there are ways to limit the access. But none of them are perfect. And, indeed, supervised release is not a perfect mechanism either. Roberts. Thank you, counsel. Thank you. U.S. v. Joyce is submitted.
judges: Kleinfeld, Gould, Tallman